UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | No. 4:21-CR00658 MTS |
| | ) | |
| DEANTRE BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S SENTENCING MEMORANDUM AND
REQUEST FOR VARIANCE PURSUANT TO LOCAL RULE 4.01 (D)

Comes now the defendant, Deantre Brown, by and through Counsel William J. Ekiss, and herein files with this Court the defendant's sentencing memorandum, and request for variance. In support of defendant's request, he states the following:

On October 4, 2023, Deantre Brown, entered a plea of guilty to (2) counts of felon in possession of ammunition.   Deantre Brown is set to be sentenced January 3, 2024.

Consistent with the plea agreement the parties agreed that either party may request a sentence above or below the sentencing guideline range ultimately determined by the Court pursuant to any chapter of the guidelines and 18 USC, Section 3553 (a).

## I.    Law and Argument

### A. 18 U.S.C. § 3553(a) Considerations in Support of Defendant's Sentencing Request

Counsel knows that this Honorable Court is versed in the advisory state of the sentencing guidelines and its application.   As such, Counsel will not belabor this Court with a long dissertation of case law relative to the that issue.

The sentencing purposes set forth in Title 18, United States Code, Section 3553(a)(2),

direct the Court to base the need for a sentence, not only on the nature and circumstances of the offense, but also on the history and characteristics of the defendant. The purposes, as outlined in the United States Code, are well recognized by this Court, and there is no need to reiterate them here.

The sentencing guidelines are advisory, and offer several factors for this Court to consider in its sentencing calculation of Deantre Brown.   While the parties have agreed to utilize the guidelines, the parties have also agreed that the defendant may request a sentencing variance and/or departure below the applicable guideline range pursuant to any chapter of the Guidelines or pursuant to Title 18, United States Code, Section 3553(a).   The Eighth Circuit has repeatedly acknowledged, all Guidelines are advisory. *United States v. Meirick,* 674 F.3d 802 (8th Cir. 2012).

## B. Requested Sentence

Deantre Brown requests that this Honorable Court impose a sentence of 30 months, for reasons stated herein and supported by the presentence investigation report, as outlined on page 15, paragraph 89.   The advisory Guideline range suggested by the government and outlined in the presentence report is 46 to 57 months.   The defendant argues that the guideline range for punishment is excessive and greater than necessary to serve sentencing purposes under § 3553(a). As such, the defendant argues that based upon the defendant's characteristics and the nature of the offense, that the appropriate sentence under such circumstances is 30 months.

As noted in the presentence report, Deantre experienced a very traumatic childhood being raised in a gang, drug and gun infested neighborhood.   Deantre was primarily raised by his mother and grandmother (who suffers from dementia).   He assisted in her care prior

2

to being arrested and detained.

His parents were never married.   As such, Deantre had very little, if any, contact with his father during the majority of his life, most specifically during his formative years growing up.   Deantre witnessed domestic violence in the home, at the age of 2 or 3 he recalled his father assaulting his mother and seeing bite marks on her knees.   Deantre's father is serving a 30-year sentence in the Missouri Department of Corrections for Robbery first degree, Kidnapping and Robbery second degree.   The defendant was raised without a father.

Deantre reported being left alone at home around the age of 12 because his mother had to work two jobs in order to keep a roof over their head and food on the table.   The family often relied on food stamps and government assistance to make ends meet and avoid deprivation.   Deantre, not knowing any better and without any father figure in his life, took advantage of his lack of supervision.   He would sneak out of the house and run the streets while his mother worked the night shift.

At the age of 12, Deantre joined a gang.   Deantre was an only child, and as a result was often "bullied" in elementary school being gang beaten, jumped and even shoot outside of his middle school when a fight broke out and a gun was pulled.

While living in a gang, drug and violence infested neighborhood, the defendant recalls walking across the street to the store and seeing "brain matter" splattered on the ground; the defendant was 7 years old.   At the age of 13, thugs in the defendant's neighborhood pulled a gun on him and threatened to kill him but he was able to get away and hid from the bullies.

Deantre reported losing "a lot of people to gang violence" in addition to his cousin

3

being shot in the stomach and subsequently died of the gunshot wound; the defendant was 20 years old.   The defendant never received any mental health treatment or counseling as a result of the gun and gang violence he witnessed or was the victim of.   *See Doc. #69, Presentence Investigation Report, page 9.*

### C.   The Breakdown of Family, Absentee Father and Lack of Community as a Mitigating Factor Under § 3553(a) for a variance

Numerous reports about broken families, fatherless children and crime within the community have been written.   There is no doubt that a parallel can be drawn between broken families, fatherless children and crime within the community a person grows up in, and the criminal conduct among those juveniles and young adults.   That is the case with Deantre Brown.

Ones propensity to partake in criminal conduct, according to one study, develops in stages that associate with psychological and sociological factors.   According to the study, such is not always caused by race and poverty (although some studies see a correlation between the two and criminal conduct) the stages evolve during the normal tasks of growing up that every child confronts as he gets older.   In the case of future violent criminals these tasks, in the absence of the love, affection and dedication of both parents, become perverse exercises, frustrating his or her needs and stunting his ability to belong.   Criminal behavior comes in various stages: (1) Early infancy, (2) Mid-childhood and (3) Adolescence.   (***Defendant's Exhibit A, The Real Root Causes of Violent Crimes:   The Breakdown of Marriage, Family and Community, by Patrick Fagan, March 17, 1995).***   In all of these stages, the lack of dedication and the atmosphere of rejection or conflict with the family diminishes the child's experience in

his on personal life as one of love, dedication, and a place to belong.   Instead, such can be characterized increasingly by rejection, abandonment, conflict, isolation and even abuse.   He is compelled to seek a place to belong outside of the home and, most frequently, outside of any ordinary community.   Those children that are the victims of being rejected and abandoned often find a sense of being among others who have experienced similar rejection.   He becomes attached to those who are alienated, for, like him, they have been rejected.   Not finding acceptance and nurturance from caring adults, they begin conveying their own form of acceptance.   (*Id*. at pages 5-6.)

Criminal behavior, according to scholarly literature, has a pattern of behavior and evolves through various stages of one's life.   But what appears to be agreed upon the most by those scholarly groups and minds, is the need for a stable family and community life, noting that children being raised by a single mother are more likely to fail socially and emotionally.   (***Defendant's Exhibit B***, ***Are Children Raised with Absent Father's Worse Off? By Isabel V. Sawhill, July 15, 2014***).

Deantre Brown did not have a stable family life, a father to mentor him nor was he part of a community in which he could thrive and grow.

As referenced in the presentence report, the defendant reported that this father was not involved in his life, his mother worked two jobs leaving him home alone at the age of 12, during which time the defendant would leave his house and run around the neighborhood unsupervised.   His size, lack of family and siblings, as well as being an only child, resulted in Deantre being taken advantage off, often bullied, beaten and intimidated resulting in joining a gang at the age of 12.   Deantre never had a chance to thrive and grow, leaving high school in the 11th grade.   Deantre's parents where never

married to each other, thereby denying him a nurturing home environment; but instead resulted in an unsupervised child running the streets at the age of 12 because he did not know any different.   He starved for attention, affection and friendship finding it on the streets and in a gang at 12 years old.

The history of Deantre Brown's life fits the profile of a fatherless child, from a broken family, wo is unsupervised at the age of 12, joining a gang while living in a drug infested violent neighborhood which led him to a life of survival, self-reliance, crime and mistrust.   Deantre's mother confirmed that he suffered from mental health issues, that went untreated as well as being extremely angry with his father for not being a part of his life.

The tragedy of defendant's life, is clearly written in how he was raised, by whom he was raised and the circumstances surrounding why he was raised in that fashion. Growing up without a father in his life, being bullied, shot and witnessing numerous friends being shot in his neighborhood as a result of gang violence not only contributed to his lack of trust in others, but substantially contributed to a lifetime of potential mental health disorders that have went untreated.   All of which took place during Deantre's most formative years.

Deantre's history and the characteristics surrounding his childhood can all be considered mitigating factors under 3553(a), and thereby warrant and justify a variance.

**D. Childhood Bullying Victimization, Substance Abuse and Criminal Activity among Adolescents are Mitigating factors under 3553 (a) and grounds for a variance.**

A study was published on line by the International Journal of Environmental

Research and Public Health, December 31, 2022.   The study focused on the effects of childhood bullying victimization (CBV) and how the bullying impacted substance use and criminal activity among adolescents over time.   While being bullied increased substance use, there did appear to be a correlation between bullying and criminal activity, but such did not rise to a level higher than substance use.

But what the study did reveal is that adolescents who are bullied in school experience various types of negative emotional conditions and may seek convenient coping strategies to "feel better".   For this reason, many studies have demonstrated that bullying victimization increases the risk of substance use.   One study, for instance, indicated that victims of bullying were at an elevated risk of alcohol and drug use, which were utilized as negative coping strategies.   Another study reported that cyberbullying victimization was positively associated with cigarette and alcohol use among sixth- to tenth-grade students.

However, our interests are focused on bullying and criminal behavior.   In that realm of the study, it did reveal that bullying victimization may also result in aggressive or criminal behaviors, which can be another type of coping strategy to deal with negative emotions. Barboza (one of researchers) examined adolescents' (ages 12–18) engagement in school delinquency and aggressive behaviors according to the existence and types of bullying victimization they had experienced.   **The findings showed that victims of severe bullying reported the highest likelihood of school delinquencies (e.g., avoiding school activities, skipping classes, and carrying a gun to school)**.   In addition, victims of face-to-face bullying were at the highest risk for involvement in physical fights compared to non-victims and victims of cyberbullying.   (***Defendant's***

*Exhibit C, <u>Childhood Bullying Victimization, Substance Use and Criminal Activity</u>*

*<u>among adolescents, a study by the International Journal of Environmental Research</u>*

*<u>and Public Health, December 31, 2022).</u>*

As stated in the presentence report, the defendant's size, lack of family and being

an only child, resulted in Deantre being taken advantage of, often bullied, gang beaten

and intimidated which arguably speaking could and most likely was a contributing factor

to him joining a gang at the age of 12.   Moreover, the defendant suffered bullying at the

hands of those in his neighborhood resulting in a gun being pulled on the defendant and

being told he was going to be killed.   These are all traumatic events that dictated the

choices Deantre made in his life.   Who is to say that such bullying and threats did not

lead Deantre to make poor decisions and choices.

**E. <u>Given the Nature and Circumstances of Deantre Brown's Offense, the history,</u>**

**<u>and characteristics of the defendant, a variance under Section 3553 (a) is requested; the</u>**

**<u>Sentence Requested Is Sufficient but Not Greater Than Necessary to Satisfy the Purposes</u>**

**<u>of Sentencing.</u>**

**In enacting the Sentencing Reform Act, Congress did "not favor one purpose**

**of sentencing over another," except that rehabilitation was not to be a reason to**

**impose a sentence of incarceration**. *See* S. Rep. No. 98-225, at 67 (1983). Rather, "each

of the four stated purposes should be considered in imposing sentence in a particular

case," and "one purpose of sentencing may have more bearing on the imposition of

sentence in a particular case than another purpose has." *Id*. at 68. In choosing what kind of

sentence to impose, the court "must consider" all of the purposes and factors set forth in §

3553(a). *Id*. at 119.

8

In an article written by Amnoni L. Myers, titled "*Black Children and Foster Care: On Surviving the Trauma of a System That Doesn't Care About Keeping Families Together", dated May 28, 2018*, the author details the life of a black child who is 12 years of age at the time of her removal from her family.   She failed; her story is real.

The article states, according to national data, in 2015 approximately 428,000 children were in the foster care system; black children made up 23% percent of those children, and in 2015 more than 20,000 foster children of color aged out of the system at 18 without reuniting with their family or finding permanent homes.   According to the National Foster Youth Institute, nearly 20% percent of those who age out of the system end up homeless; and nearly 60% percent of young men in foster care have been convicted of a crime.   (***Defendant's Exhibit D, The Root-Black News, Opinions, Politics and Culture, Black Children and Foster Care: On Surviving the Trauma of a System That Doesn't Care About Keeping Families Together", by Amnoni L. Myers, dated May 28, 2018).***

The defendant uses this example and publication to illustrate a comparison between 12-year-olds who both struggle with family relationships and a community in which to grow and thrive.   Such bears a close similarity between an unsupervised child and child shuffled through the foster care system.   Neither child has a stable living environment from which to grow and thrive, nor a real role model or mentor to trust.

### F.   Punishment and Deterrence, 18 U.S.C. § 3553(a) (2) (B)

The sentence requested of 30 months bears a more logical nexus to the charge at issue; based upon Deantre's history, childhood abandonment, lack of supervision and bullying experience at a very influential age.

To that end, empirical evidence is unanimous in that there exists no relationship between sentence length and general or specific deterrence, regardless of the type of crime. _See_ Andrew von Hirsch _et al._, _Criminal Deterrence and Sentence Severity: An Analysis of Recent Research_ (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, _Purposes and Functions of Sentencing_, 34 Crime and Justice: A Review of Research 28- 29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); Donald P. Green & Daniel Winik, _Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders_, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re- arrested at similar rates over a four-year time frame").   Based on this much defined research, any argument regarding adequate deterrent that necessarily requires imprisonment fails and instead supports Deantre Brown's motion for a variance, under Section 3553 (a).

## II. Conclusion

There are multiple reasons to grant a variance in this case.   The history of Deantre's

childhood trauma and hardships is well depicted in the presentence report.   One cannot imagine

the trauma Deantre suffered at the hands of bullies in school and his gang, drug and violence

infested neighborhood.   There is no evidence in the presentence report that Deantre received any

psychiatric or psychological counseling after being bullied, being threatened to be killed or

witnessing the violence of friends being shot in his neighborhood.

Part F of the presentence report cites factors that may warrant a sentence

outside of the advisory guideline system.   *See Doc.#69, page 15 paragraph 89*.   It is the

opinion of the presentence report writer that the defendant, Deantre Brown, experienced a

very traumatic childhood being raised in a gang, drug and gun infested neighborhood.

Deantre was primarily raised by his mother and grandmother (who suffers from dementia).

His parents were never married.   As such, Deantre had very little, if any, contact with his

father during the majority of his life, most specifically during his formative years growing

up.   Deantre witnessed domestic violence in the home, at the age of 2 or 3 he recalled his

father assaulting his mother and seeing bite marks on her knees.   Deantre's father is serving

a 30-year sentence in the Missouri Department of Corrections for Robbery first degree,

Kidnapping and Robbery second degree.   The defendant was raised without a father.

Deantre reported being left at home alone around the age of 12 because his mother

had to work two jobs the keep a roof over their head and food on the table.   The family often

relied on food stamps government assistance to make ends meet and avoid deprivation.

Deantre, not knowing any better and without any father figure in his life, took advantage of

his lack of supervision and would leave the house while his mother was working nights.   He

would run the streets.   At the age of 12, Deantre joined a gang.   Deantre was an only child,

and as a result was often "bullied" in elementary school being gang beaten, jumped and even

11

shoot at outside of his middle school when a fight broke out and a gun was pulled.

As such, the characteristics of the defendant and the nature of the offense support a variance under the sentencing guidelines, the sentencing statutes and the 3553 (a) factors, as well as the purpose from which to impose a rational and reasonable sentence based upon the defendant's characteristics.   The sentence requested by Deantre Brown under such circumstances clearly serves the ends of the guidelines and the statute, and proves sufficient to meet the factors and purposes set forth in 18 United States Code, Section 3553 (a), while at the same time, would not be greater than that necessary to punish Deantre Brown for his crime.

Counsel respectfully requests that this Honorable Court sentence Deantre Brown to the sentence requested.

Respectfully Submitted,

THE EKISS LAW FIRM

/s/ William J. Ekiss
William J. Ekiss #47389
5770 Mexico Rd., Ste. A
St. Peters, MO 63376
(636) 317-6331
billekiss@theekisslawfirm.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of December, 2023, the foregoing was electronically filed with the Clerk of the Court, and Ms. Jennifer Szczucinski, Assistant U.S. Attorney.

/s/ William J. Ekiss
William J. Ekiss #47389
5770 Mexico Rd., Ste. A
St. Peters, MO 63376
(636) 317-6331
billekiss@theekisslawfirm.com